1  **GLANCY PRONGAY & MURRAY LLP**
   LIONEL Z. GLANCY (#134180)
2  ROBERT V. PRONGAY (#270796)
   LESLEY F. PORTNOY (#304851)
3  CHARLES H. LINEHAN (#307439)
   1925 Century Park East, Suite 2100
4  Los Angeles, CA 90067
   Telephone: (310) 201-9150
5  Facsimile: (310) 201-9160
   Email:  rprongay@glancylaw.com
6
7  *Counsel for Plaintiff*
8  [Additional Counsel Listed On Signature Page]

9              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
10

11 | STEPHEN LOPES, Individually and On | Case No.: |
12 | Behalf of All Others Similarly Situated, | |

13                            Plaintiff,    **CLASS ACTION COMPLAINT FOR**
                                           **VIOLATIONS OF THE FEDERAL**
14            v.                           **SECURITIES LAWS**

15 FITBIT, INC., JAMES PARK, and
16 WILLIAM ZERELLA,                        **JURY TRIAL DEMANDED**

17                            Defendants.

18
19
20
21
22
23
24
25
26
27
28

Plaintiff Stephen Lopes ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Fitbit, Inc. ("Fitbit" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Fitbit; and (c) review of other publicly available information concerning Fitbit.

## **NATURE OF THE ACTION AND OVERVIEW**

1.      This is a class action on behalf of persons and entities that acquired Fitbit securities between August 2, 2016 and January 30, 2017, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Fitbit claims to be a technology company focused on health-related devices.  The Company's products purportedly include wearable devices—health and fitness trackers and smartwatches—that enable users to view data about their daily activity, exercise, and sleep, in real-time.

3.      On November 2, 2016, Fitbit issued a press release announcing its Q3 2016 financial results.  In the press release, Fitbit disclosed that it was lowering its full year 2016 revenue guidance to "between $2.320 billion and $2.345 billion," down from the previously-announced "$2.5 to $2.6 billion."

4.      On this news, Fitbit's share price fell $4.30 per share, or 33.6%, to close at $8.51 per share on November 3, 2016, on unusually heavy trading volume.

5.      On January 30, 2017, Fitbit issued a press release announcing its preliminary fourth quarter 2016 financial results.  In the press release, Fitbit disclosed that it expected fourth quarter

of 2016 revenue to be in the range of $572 million to $580 million, rather than its previously announced guidance range of $725 million to $750 million. Fitbit also disclosed expected annual revenue growth of approximately 17%, rather than the previously-announced forecast of 25% to 26%.

6.      On this news, Fitbit's share price fell $1.15 per share, or 16%, to close at $6.06 per share on January 30, 2017, on unusually heavy trading volume.

7.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that the company was struggling to transition its mission and differentiate itself from Apple Inc. and other competitors; (2) that, as such, the Company was experiencing increased competition; (3) that, as a result, demand and sell-through for the Company's existing and new products were being negatively impacted; (4) that, as a result, the Company's sales and financial results were weakening, and growth was slowing; (5) that the Company's financial guidance was overstated; and (6) that, as a result of the foregoing, Defendants' statements during the Class Period about Fitbit's business, operations, financial results and prospects, were materially false and/or misleading and/or lacked a reasonable basis.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company's principal executive offices are in this Judicial District.

12.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13.    Plaintiff Stephen Lopes, as set forth in the accompanying certification, incorporated by reference herein, purchased Fitbit securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.    Defendant Fitbit, Inc. is incorporated in Delaware and its principal executive offices are in San Francisco, California.  Fitbit's Class A common stock trades on the New York Stock Exchange ("NYSE") under the symbol "FIT."

15.    Defendant James Park was the President, Chief Executive Officer ("CEO"), and Chairman of Fitbit at all relevant times.

16.    Defendant William Zerella ("Zerella") was the Chief Financial Officer ("CFO") of Fitbit at all relevant times.

17.     Defendants Park and Zerella (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of Fitbit's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Fitbit claims to be a technology company focused on health-related devices.  The Company's products purportedly include wearable devices—health and fitness trackers and smartwatches—that enable users to view data about their daily activity, exercise, and sleep, in real-time.

### Materially False and Misleading
### Statements Issued During the Class Period

19.     The Class Period begins on August 2, 2016.  On that day, the Company issued a press release entitled "Fitbit Reports $587M Q216 Revenue, $0.03 GAAP EPS/$0.12 Non-GAAP EPS, and Confirms Revenue and Profit Guidance for FY16."  Therein, the Company, in relevant part, stated:

> Fitbit, Inc. (NYSE:FIT), the leader in the connected health and fitness market, today reported revenue of $586.5 million, GAAP diluted net income per share of $0.03, non-GAAP diluted net income per share of $0.12, GAAP net income of $6.3 million, and adjusted EBITDA of $48.3 million, for its second quarter of 2016.

"Second quarter results reflect accelerated unit and revenue growth in the U.S. and EMEA, our two largest markets, despite an unusually strong Q215 with the full availability of Fitbit Charge HR fulfilling built-up demand in that quarter," said James Park, Fitbitco-founder and CEO. "Our strong profitability reflects careful management of operating expenses, while we continue to invest in future growth. Based on the progress of our business, against a backdrop of a growing worldwide opportunity for our products, we remain confident in our guidance for the year."

\*      \*      \*

**Second Quarter 2016 Financial Highlights**

- Sold 5.7 million devices

- Q216 revenue increased 46% year-over-year

- U.S. comprised 76% of Q216 revenue; EMEA 17%, APAC 2%, and Other Americas 5%

- U.S. revenue grew 42% year-over-year; EMEA 150%, APAC (54)%, and Other Americas 63%

- APAC was impacted by factors including the progressive shut down of retailer Dick Smith in Australia and a reduction of channel inventory. Excluding the Australia impact, APAC revenue increased 98% year-over-year.

- New products, Fitbit Blaze$^{TM}$ and Alta$^{TM}$, including related accessories, comprised 54% of Q216 revenue, compared to 50% in Q116

- Gross margin was affected by an increase in warranty reserves for legacy products, with an expectation the additional reserves taken will adequately cover future warranty liability, allowing a return to more normalized gross margins beginning in Q316

- The 120% GAAP and 90% non-GAAP year-over-year increase in operating expense reflects increased investments in R&D and marketing to drive innovation and growth

\*      \*      \*

**Outlook and Guidance**

Fitbit's outlook for the third quarter of 2016 is as follows:

- Revenue in the range of $490 to $510 million

- Non-GAAP gross margin of approximately 48% to 49%

- Adjusted EBITDA in the range of $70 to $80 million

- Non-GAAP diluted net income per share in the range of $0.17 to $0.19

- Non-GAAP diluted share count between 244 and 247 million

- Stock-based compensation expense in the range of $26 to $28 million

- Non-GAAP tax rate of approximately 30%

Fitbit's outlook for the full year of 2016 is as follows:

- Revenue in the range of $2.5 to $2.6 billion

- Non-GAAP gross margin of approximately 47%

- Adjusted EBITDA in the range of $430 to $490 million

- Non-GAAP diluted net income per share in the range of $1.12 to $1.24

- Non-GAAP diluted share count between 244 and 250 million

- Stock-based compensation expense in the range of $92 to $97 million

- Non-GAAP tax rate of approximately 30%

20.    On the same day, August 2, 2016, Fitbit held a conference call to discuss its Q2 2016 results.  On the call, Defendants Park and Zerella made multiple representations regarding the Company's growth, demand for Fitbit products, the effects of competition, and the Company's guidance.  For example, with respect to growth, Park stated:

> I'm excited to report another quarter that demonstrated Fitbit's continued growth and positive impact on health and fitness for consumers around the world. The latest industry reports by IDC show that Fitbit continues to be the leader in the worldwide wearable market by units as of the end of Q1. U.S. unit and dollar growth accelerated over Q1 despite an unusually strong Q2 of last year that benefited from the full availability of Charge HR, and we demonstrated continued growth into an expanding long-term international market opportunity.
>
> In addition, given consumer response to Fitbit Blaze and Alta so far this year, the early positive response from retailers seeing the new products we have for the fall are increasing brand strength and distribution footprints, and network effects from our large active user community and a continuing R&D investments we are making to integrate more deeply into the healthcare ecosystem, which will make our devices essential part of people's lives. I'm confident in the company's future for the rest of this year and beyond.
>
> In fact, I'm so confident that I will not sell any stock till the end of the year. Joining me in that commitment are co-founder and CTO, Eric Friedman; and CFO, Bill Zerella. We continue to lead the wearables category we helped to create and see substantial runway ahead. We continue to have the leading unit market share in the U.S. for connected activity trackers. In fact Charge HR and Alta, our two most popular activity trackers sold in Q2.

*       *       *

Our advantage in broad global distribution and consumer awareness has required significant and consistent investment over a long period of time. To gain retail presence requires giving retailers good margins and compelling merchandising support, including displays in which we are investing substantially. In the same vein, the strength of the Fitbit brand driven by our significant investments in marketing activities and advertising has driven our success with products such as Blaze and Alta and the overall growth of our business in key countries across the world.

*       *       *

I want to wrap up this part of my discussion with a couple of thoughts about demand and our growth opportunity. We believe that smartphone penetration provides a reasonable point of comparison for addressable opportunities in different markets as we believe a significant portion of smartphone users can become Fitbit users over time. I think it's worth highlighting some of the numbers that quantify both the size and expected duration of our market opportunity. This year there are expected to be more than 2 billion smartphones in use around the world. As of the end of the second quarter 2016, Fitbit has shipped a lifetime total of 35.6 million Fitbits in the U.S. which represent only 15% of the approximately 230 million smartphones here.

21.     On the same call, with respect to demand for the Company's products, Park stated:

Fitbit Blaze and Alta have achieved strong rankings on Amazon in the U.S. and together have earned nearly 7,000 reviews, which is significant given the short time in market with both products rated four stars or better. Of all the activations of Alta and Blaze in the second quarter, approximately two-thirds were by new customers and the other one-third were by people who own or previously owned another Fitbit device. Similar to last quarter, approximately one-fifth of those repeat purchasers were reactivations having been inactive for 90 days or more. This demonstrates that our business is both sustainable and growing, attracting new customers while successfully trading existing users up to new devices.

We have additional new products to come this year. The positive response we have received from retailers, who have had the chance to preview these new products under NDA in recent weeks, strengthens our confidence in our guidance for the year. Fitbit will have more new products for consumers to choose from for this year's holiday season than we've ever had before.

22.     On the same call, with respect to competition in the marketplace, Park stated:

Earlier this year, we expanded our addressable market opportunity with the Fitbit Blaze, which has done incredibly well. The number of Fitbit Blaze devices sold alone was a close second to IDC's estimate for the Apple Watch in the second quarter. It's exciting to be leading in such a large and expanding category with IDC predicting at 20% compounded annual growth rate expecting more than 200 million wearable devices shipping in 2020.

An opportunity of this size will naturally attract a great deal of competition. There is a misconception that an increasing number of competitors in the crowded marketplace have created a significant headwind for us, with new market entrants large and small being called out with some concern. However, it's not the number of competitors that is important, but their impact on the market. And the reality is that most of these entrants have not altered the competitive dynamics of our

industry. That may come as a surprise to casual observers, but the simple answer is, this is not a simple market to succeed in for a number of reasons.

*        *        *

Consumers love our devices, as reflected by ratings on places such as Amazon, but the device is only one part of the consumers' experience. Significant effort is required to continually improve the interactive experience for Fitbit users in our apps, which is reflected in the fact that our apps are currently top ranked in their categories in the top app stores.

The robust social experience in the Fitbit app is another key part of our success and it's created a competitive moat supported by the network effect of our large active user community. We believe people are more likely to buy a Fitbit over a competitor, because their friends and family are more likely to be already participating in the Fitbit social experience and we believe people are less likely to leave to a competitor, due to similar dynamics.

23.     Finally, on the call, with respect to the Company's guidance, Defendant Zerella elaborated:

Our revenue guidance reflects the impact of seasonality combined with clearing the channel of several legacy products. While we expect to start refilling the channel in the latter part of Q3 2016 in connection with new products for the holidays, revenue will be dependent on the production ramp coming out of the factory. This guidance also reflects further reductions in channel inventory in Asia Pac during the quarter before an expected resumption of growth in that region in Q4 2016. I want to emphasize that even with this channel clearing, the midpoint of our guidance reflects a 22% year-over-year increase in revenue and a 58% sequential increase in adjusted EBITDA, reflecting the expected improvement in operating leverage beginning in the second half.

24.     On August 4, 2016, Fitbit filed its quarterly report with the SEC on Form 10-Q for the quarterly period ended July 2, 2016.  The Company's 10-Q was signed by Defendant Zerella and reaffirmed the financial results announced in the press release issued on August 2, 2016.

25.     On October 6, 2016, Defendant Park participated in an interview with Jim Cramer on CNBC where he made a variety of positive statements about Fitbit's business, operations, and prospects.  For example, during the interview, Cramer asked Park about competition from Apple Inc.  Park responded that Fitbit's focus is very different from Apple's, in that the Company aims to encourage users to become healthier and more active.  Park added that "[w]e are a fitness social network that is coupled to hardware, and we are on the cusp of transitioning the mission and purpose of our company from a consumer electronics company to a digital healthcare company."

Park also touted the sales and demand for the Company's Charge 2 Device, stating "Fitbit Charge 2 is the No. 1 best-selling fitness tracker on Amazon."

26.     The above statements identified in ¶¶19-25 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, Defendants failed to disclose: (1) that the company was struggling to transition its mission and differentiate itself from Apple Inc. and other competitors; (2) that, as such, the Company was experiencing increased competition; (3) that, as a result, demand and sell-through for the Company's existing and new products were being negatively impacted; (4) that, as a result, the Company's sales and financial results were weakening, and growth was slowing; (5) that the Company's financial guidance was overstated; and (6) that, as a result of the foregoing, Defendants' statements during the Class Period about Fitbit's business, operations, financial results and prospects, were materially false and/or misleading and/or lacked a reasonable basis.

27.     On November 2, 2016, Fitbit issued a press release announcing its Q3 2016 financial results.   In the press release, Fitbit disclosed that it was lowering its full year 2016 revenue guidance to "between $2.320 billion and $2.345 billion," down from the previously-announced "$2.5 to $2.6 billion."   In greater part, the Company stated:

> Fitbit, Inc. (NYSE:FIT), the leader in the connected health and fitness market, today reported revenue of $504 million, GAAP diluted net income per share of $0.11, non-GAAP diluted net income per share of $0.19, GAAP net income of $26 million, and Adjusted EBITDA of $81 million, for its third quarter of 2016.

> "I am pleased to see positive reception for our new products launched in the third quarter. We are attracting new customers while our existing ones are upgrading their devices, underscoring the strength of the Fitbit brand and growing relevancy of wearables as part of consumers' everyday lives," said James Park, Fitbit co-founder and CEO. "We continue to grow and are profitable, however not at the pace previously expected. We are focused on improving the utility of our products and integrating more deeply into the healthcare ecosystem and believe we can leverage our brand and community to unlock new avenues and adjacencies of growth."

*       *       *

**Business Outlook**

- Full year 2016:
  The company expects revenue between $2.320 billion and $2.345 billion,
  representing growth of 25%-26%, with non-GAAP earnings per diluted
  share in the range of $0.55 to $0.59, and a non-GAAP tax rate of
  approximately 34%.

- Fourth quarter 2016:
  The company expects revenue between $725 million and $750 million,
  representing growth of 2%-5%, with non-GAAP earnings per diluted share
  in the range of $0.14 to $0.18, and a non-GAAP tax rate of approximately
  33%.

28.    On this news, Fitbit's share price fell $4.30 per share, or 33.6%, to close at $8.51 per share on November 3, 2016, on unusually heavy trading volume.

29.    On November 4, 2016, Fitbit filed its quarterly report for the period ended October 1, 2016 with the SEC.  The 10-Q was signed by defendant Zerella and reaffirmed the financial results announced in the Company's November 2, 2016 press release.

30.    The above statements identified in ¶¶27, 29 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose: (1) that the company was struggling to transition its mission and differentiate itself from Apple Inc. and other competitors; (2) that, as such, the Company was experiencing increased competition; (3) that, as a result, demand and sell-through for the Company's existing and new products were being negatively impacted; (4) that, as a result, the Company's sales and financial results were weakening, and growth was slowing; (5) that the Company's financial guidance was overstated; and (6) that, as a result of the foregoing, Defendants' statements during the Class Period about Fitbit's business, operations, financial results and prospects, were materially false and/or misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

31.    On January 30, 2017, Fitbit issued a press release entitled "Fitbit Announces

Preliminary Fourth Quarter 2016 Results."   Therein, the Company announced its preliminary fourth quarter 2016 financial results.   In the press release, Fitbit disclosed that it expected fourth quarter of 2016 revenue to be in the range of $572 million to $580 million, rather than its previously announced guidance range of $725 million to $750 million.   Fitbit also disclosed expected annual revenue growth of approximately 17%, rather than the previously-announced forecast of 25% to 26%.   Fitbit also indicated that it expected its non-GAAP fourth quarter gross margin to be "materially below its previously issued 46% guidance . . . ."   Among other relevant portions, the Company stated:

> Fitbit, Inc. (NYSE: FIT), the leader in the connected health and fitness market, today announced preliminary financial results for the fourth quarter ended December 31, 2016.
>
> Based upon preliminary financial information, Fitbit expects to report 6.5 million devices sold and revenue for the fourth quarter of 2016 to be in the range of $572 million to $580 million, compared to the company's previously announced guidance range of $725 million to $750 million. For the full-year 2016, Fitbit expects annual revenue growth to be approximately 17% from the previous forecasted growth of 25% to 26%. Non-GAAP diluted net loss per share for the fourth quarter is expected to be in the range of ($0.51) to ($0.56) compared to the previously announced guidance range of non-GAAP diluted net income per share of $0.14 to $0.18. The non-GAAP effective tax rate is expected to be materially higher than prior guidance. For the full-year 2016, Fitbit expects to earn approximately $32 million in non-GAAP free cash flow and have approximately $700 million in cash, cash equivalents, and marketable securities on its balance sheet. Fourth quarter results are subject to change based on the completion of the company's customary year-end audit review process.
>
> "Fourth quarter results are expected to be below our prior guidance range; however, we are confident this performance is not reflective of the value of our brand, market-leading platform, and company's long-term potential. While we have experienced softer-than-expected holiday demand for trackers in our most mature markets, especially during Black Friday, we have continued to grow rapidly in select markets like EMEA, where revenue grew 58% during the fourth quarter. To address this reduction in growth and what we believe is a temporary slowdown and transition period, we are taking clear steps to reduce operating costs. Looking forward, we believe Fitbit is in a unique position to stimulate new areas of demand by leveraging the data we collect to deliver a more personalized experience while developing upgraded versions of existing products and launching additional products to expand into new categories," said James Park, Fitbit co-founder and CEO. "As the overall wearable category leader, we exited the year with an engaged community of over 23.2 million active users, making us uniquely positioned to be the partner of choice for the healthcare ecosystem, which is a key component of our long-term strategy."

Fitbit is taking direct action to reduce the expense basis of the company while maintaining necessary investments to drive future growth and maintain its global leadership position in the wearables market.

- Targeting a reduction in the 2016 exit operating expense run rate of approximately $200 million, to approximately $850 millionfor 2017, which includes realigning sales and marketing spend and improved optimization of research and development investments.

- Conducting a reorganization of its business, including a reduction in force, that will impact approximately 110 employees, constituting approximately 6% of the company's global workforce, creating a more focused and efficient operating model. The cost of these reorganization efforts is expected to be approximately $4 million to be recorded in the first quarter of 2017.

"We believe the evolving wearables market continues to present growth opportunities for us that we will capitalize on by investing in our core product offerings, while expanding into the smartwatch category to diversify revenue and capture share of the over $10 billion global smartwatch market," said Park. "We believe we are uniquely positioned to succeed in delivering what consumers are looking for in a smartwatch: stylish, well-designed devices that combine the right general purpose functionality with a focus on health and fitness. With the recent acquisition of assets from Pebble, Vector Watch and Coin, we are taking action to position the company for long-term success."

\*       \*       \*

For the full year 2017, Fitbit is providing some targeted financial metrics as the company transitions its business to the next stage of growth. The company expects a challenging year over year comparison in the first half of 2017 given that new product introductions represented 52% of revenue in the first half of 2016. In addition, the company enters 2017 with a higher operating expense run rate than the first half of 2016, and channel inventory levels that are higher than previously anticipated. The company expects stabilization in financial performance in the second half of 2017. Considering these factors, the company is providing the following guidance:

- Preliminary 2017 revenue guidance of $1.5 billion to $1.7 billion.

- Preliminary non-GAAP basic net loss per share of ($0.22) to ($0.44) per basic share.

- Preliminary non-GAAP free cash flow guidance of approximately negative $50 to $100 million.

- Long-term non-GAAP gross margin of approximately 45% versus previous 50% target.

32.     On this news, Fitbit's share price fell $1.15 per share, or 16%, to close at $6.06 per share on January 30, 2017, on unusually heavy trading volume.

**CLASS ACTION ALLEGATIONS**

33.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired Fitbit securities between August 2, 2016 and January 30, 2017, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

34.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Fitbit's common stock actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Fitbit shares were traded publicly during the Class Period on the NYSE.  As of October 31, 2016, Fitbit had 170,120,929 shares of Class A common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by Fitbit or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

37.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the

questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, financial results, and prospects of Fitbit; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

38.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## **UNDISCLOSED ADVERSE FACTS**

39.    The market for Fitbit's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Fitbit's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Fitbit's securities relying upon the integrity of the market price of the Company's securities and market information relating to Fitbit, and have been damaged thereby.

40.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Fitbit's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth

herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Fitbit's business, operations, financial results, and prospects as alleged herein.

41.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Fitbit's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

42.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

43.     During the Class Period, Plaintiff and the Class purchased Fitbit's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

44.     As alleged herein, Defendants acted with scienter since Defendants knew that the

public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Fitbit, their control over, and/or receipt and/or modification of Fitbit's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Fitbit, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

45.     The market for Fitbit's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Fitbit's securities traded at artificially inflated prices during the Class Period. On September 23, 2016, the Company's stock price closed at a Class Period high of $16.98 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Fitbit's securities and market information relating to Fitbit, and have been damaged thereby.

46.     During the Class Period, the artificial inflation of Fitbit's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Fitbit's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Fitbit and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all

relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

47.     At all relevant times, the market for Fitbit's securities was an efficient market for the following reasons, among others:

(a)     Fitbit stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Fitbit filed periodic public reports with the SEC and/or the NYSE;

(c)     Fitbit regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Fitbit was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

48.     As a result of the foregoing, the market for Fitbit's securities promptly digested current information regarding Fitbit from all publicly available sources and reflected such information in Fitbit's stock price. Under these circumstances, all purchasers of Fitbit's securities during the Class Period suffered similar injury through their purchase of Fitbit's securities at artificially inflated prices and a presumption of reliance applies.

49.     A Class-wide presumption of reliance is also appropriate in this action under the

Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

50.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Fitbit who knew that the statement was false when made.

**FIRST CLAIM**
**Violation of Section 10(b) of The Exchange Act and**
**Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

51.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

52.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Fitbit's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

53.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Fitbit's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.   All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

54.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Fitbit's financial well-being and prospects, as specified herein.

55.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Fitbit's value and performance and

continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made (about, among others, Fitbit's: business; operations; prospects; sales and earnings guidance; sales; revenue; earnings; margins; channel inventory; demand; sell-through of existing and new products; reserves for warranties, inventory, and rebates; active users; supply chain; internal controls; and declining or weakening growth) in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

56.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

57.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such

defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Fitbit's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

58. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Fitbit's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Fitbit's securities during the Class Period at artificially high prices and were damaged thereby.

59. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Fitbit was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Fitbit securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

60.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

62.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

63.     Individual Defendants acted as controlling persons of Fitbit within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65.     As set forth above, Fitbit and Individual Defendants each violated Section 10(b)

and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 1, 2018                    **GLANCY PRONGAY & MURRAY LLP**

By:  *s/ Robert V. Prongay*
Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  rprongay@glancylaw.com

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Counsel for Plaintiff*

**SWORN CERTIFICATION OF PLAINTIFF**

Fitbit, Inc., **SECURITIES LITIGATION**

I, Stephen Lopes, certify:

1. I have reviewed the complaint and authorized its filing and/or adopted its allegations.

2. I did not purchase Fitbit, Inc., the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Fitbit, Inc., during the class period set forth in the Complaint are as follows:

   See Attached Transactions

5. I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

   ___☐ Check here if you are a current employee or former employee of the defendant Company.

   I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: _____     _____

                             *Stephen Lopes*

                             (Please Sign Your Name Above)

[REDACTED]

**Stephen Lopes' Transactions in Fitbit, Inc. (FIT)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 08/03/2016 | Sold | -25 | $14.9800 |
| 11/03/2016 | Bought | 157 | $9.0850 |
| 12/09/2016 | Bought | 67 | $7.9500 |
| 01/20/2017 | Bought | 585 | $7.0850 |
| 01/30/2017 | Bought | 144 | $6.4090 |